**CHRIS C. WOOD, D/B/A CCW ELECTRIC**                        **PLAINTIFF**

**V.**                                  **CAUSE NO. 3:22-cv-00607-HTW-LGI**

**STUART C. IRBY CO., INC.**                                **DEFENDANT**

### MEMORANDUM IN SUPPORT OF
### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Plaintiff Chris C. Wood d/b/a CCW Electric ("Wood") and submits his Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment pursuant to Rule 56 and Local Uniform Civil Rule 7.

### A. <u>Introduction and background:</u>

Plaintiff Wood, a commercial electrical contractor in Oklahoma City, Oklahoma, seeks partial summary judgment on several issues pertaining to the proper rendering of his open account with Defendant Stuart C. Irby Co., Inc. ("Irby") who was his electrical supplier. There is no dispute that Wood's account with Irby is an open account within the meaning of *Mississippi Code Annotated* § 11-53-81 (1972, as amended). *See Franklin Coll. Serv., Inc. V. Stewart*, 863 So. 2d 925, 930 at ¶14 (Miss. 2003)("This Court has defined an 'open account' as an account based on continuing transactions between the parties which have not closed or been settled.").

Wood seeks partial summary judgment on three (3) issues regarding Irby's rendering of his open account: 1) Wood is due credit for certain surplus electrical gear and materials he returned to Irby and for which Irby refuses to issue Wood credit; 2) Wood is due credit for payments accepted by Irby but which have never been fully applied to his account; and, 3) Wood is due credit for sales taxes which Irby improperly assessed and collected from Wood on these tax-exempt public works

1

projects.

In 2014, Wood established his open credit account with Irby by filing a credit application with Irby which Irby subsequently approved. (See Ex. A to Wood's Motion) Wood served as the electrical subcontractor on several different public works construction projects on behalf of two (2) public school districts in Oklahoma City which are it issue in this matter: Edmond Memorial High School ("Edmond Memorial") and Western Heights High School ("Western Heights"). Defendant Irby served as the principal electrical supplier on all of the projects at issue, supplying electrical fixtures, gear, and other materials out of its Oklahoma City distribution facility.

While there are issues with Irby's accounting related to the Edmond Memorial projects, the biggest problems arose via Irby's repeated mistakes and mishandling of the Western Heights project known as the STEAM project, explained in detail, *infra*.

In November of 2018, Western Heights announced that it was accepting bids from contractors to construct a new three (3) story building on the Western Heights High School campus that would house its science, technology, engineering, arts, and math (STEAM) classrooms and facilities. Wynn Construction was awarded the general contract with Wood as the electrical subcontractor and Irby as the electrical supplier.

The evidence obtained through discovery in this matter, and particularly through deposition testimony, shows that Irby was responsible for *enormous* mistakes in its handling of the Western Heights STEAM project orders. The most glaring of Irby's mistakes are: 1) that Irby somehow forgot to count and include the light fixtures for the *entire third floor* of the STEAM building when it was ordering light fixtures and caused significant delay to the completion of the

project (see Whitehead Transcript, Ex. B at 58:3-59:11); 2) that Irby ordered *hundreds* of the wrong size light fixtures for the STEAM project where the Building Plans called for 8' LED light fixtures and Irby ordered and delivered 4' LED fixtures;[1] 3) by the time these mistakes were discovered, the manufacturer no longer made that line of LED light fixture and Irby had to negotiate with its manufacturer to reopen that line of light fixture and re-manufacture the additional missing STEAM fixtures at a significant time delay (many months) impacting Wood's ability to complete the project; 4) that Irby's salesman and employee, Matt Henderson, *again* ordered the *wrong* light fixtures, causing the manufacturer to make the wrong fixtures and forcing Irby to reorder the appropriate fixtures and further delay by months; 5) that the subsequently reordered appropriate light fixtures then were delivered to Irby damaged and had to be remade *yet again*, causing several more months delay.

Irby's own Oklahoma City facility employee, Meyer, testified that Irby expected to profit five percent (5%) on the STEAM project, which was approximately a $400,000 total contract. (See Ex. C, Meyer Trans. at 221:1-223:10) Irby's Oklahoma City facility employees Meyer and Whitehead testified that Irby sustained between $60,000 and $80,000 in *losses* on the STEAM project where Irby stood to profit less than $20,000 due to these mistakes. (See Ex. C, Meyers

---

[1] Irby does not manufacture light fixtures. Rather, testimony from Irby's Meyer, and Irby's former employees, Whitehead and Henderson, reveals that Irby buys the light fixtures such as the ones at issue from third-party manufacturers, and in the case of the fixtures at issue, they were manufactured by a company called Hubbell Lighting, Inc. ("Hubbell"). The testimony also shows that Irby negotiated the purchase from Hubbell through a third-party "lighting rep" called Triple C that acts as a middle-man between suppliers/distributors like Irby and manufacturers like Hubbell. Meyer testified that someone at Triple C apparently "transposed a part number" when ordering the fixtures from Hubbell and that this caused Hubbell to manufacture the wrong size light fixtures and under-order the necessary number of fixtures. (See Meyers Transcript, Ex. C at pp. 214:1-218-25)

Trans. at 216:24-218:25; see also Whitehead Trans. at 105:9-107:10)

Irby elected *not* to pursue any action against it's lighting rep, Triple C, for Triple C's alleged involvement in the transposing of the part numbers that caused the original foul-up. Likewise, Irby elected *not* to seek damages from the freight company that damaged the third round of fixtures. Rather, as will be shown, *infra*, Irby decided to put its losses off on Wood and continues to attempt to do so through this litigation.

In an effort to try to get the STEAM building ready for students to occupy it, the School District instructed Wood to install the improper fixtures and informed Wood that when the new fixtures were finally delivered, they expected Wood to install remove the wrong fixtures and install the correct ones at Wood's expense. When Irby finally delivered the proper fixtures, the School District elected to refrain from installing them; Irby ultimately agreed to credit Wood some $27,885.75 for those fixtures which were custom ordered, ultimately finally delivered a year late, and which were not suitable for resale.

Throughout the remainder of 2021 Irby and Wood attempted to come to terms regarding the resolution and closing of this account. However, in 2022, Wood began receiving telephone calls from a collections attorney that Irby had hired in Arizona named Dave Devoy, attempting to collect on the principal balance as alleged by Irby in counterclaims in this matter. Wood explained that he believed that Irby in fact owed him credits for the returned gear and materials that exceeded the amounts sought by Irby and that Wood believed Irby owed him.

Ultimately, Wood elected to file suit in Oklahoma in state against Irby seeking damages for Irby's unlawful actions and seeking punitive damages. Irby removed the matter to Federal Court, filed its Answer and Counterclaims, and moved to transfer venue to this Court.

4

Pursuant to discovery requests in this matter, on or about September 7, 2023, Irby finally produced its invoices regarding Wood's account beginning with January 1, 2018 to the present, and Wood has sought diligently since then to understand those invoices, discussed at length, *infra*. It is from those invoices and testimony regarding same that Wood makes much of the instant Motion for Partial Summary Judgment.

### b. Irby's refusal to credit Wood for gear and materials Wood returned in expectation of credit and Irby's conversion of Wood's property.

In March or April of 2021, Wood returned a large amount of new, unused surplus gear and materials to Irby in expectation of credit to be applied to Wood's account. A complete list of those items is attached to Wood's Complaint [Dkt. # 1-1 at p. 11]. (A true and correct copy of this list is found in Wood's Complaint, which is attached to Wood's Motion as Exhibit "G")

Irby cannot dispute that it provided these items to Wood nor that he paid Irby for them; the items are clearly invoiced to Wood and payment for them is evidenced by Irby's internal payment notations as follows, with the exceptions of the items below designated as "will supplement" which Wood is still trying to identify in the invoices:

| Part No: | Description | Invoice No. Bates# | Check# | |
|---|---|---|---|---|
| HU365R | 400 amp outdoor disconnect 600v | S011132630.002 | 3240 | 000379 |
| HU 364N | 200 amp outdoor disconnect 600v | S010888172.002 | 3198 | 000258 |
| JJA36225 | 225 amp powerpack breaker x 3 | (***will supplement) | | |
| H361RB | 30 amp 600v outdoor disconnect x 8 | S011132630.002 | 3240 | 000379 |
| Q02000NS | 100 amp/240V enclosed molded ase switch | S011132630.002 | 3240 | 000379 |
| HU362RB | 60 amp outdoor 600v x5 | S011132630.002 | 3240 | 000379 |
| 2510FG1 | FHP manualmotor starter x 21 | S010888172.002 | 3198 | 000258 |
| NQMB4LA | NQ breaker kit | S011132630.008 | 3240 | 000387 |
| J250S | circuit breaker enclosure 250amp | S011132630.006 | 3240 | 000390 |
| IVO2H305Y74L1 | combination motor starters 600v | (**will supplement) | | |
| OMNIDT2000 | Hubbell sensor x 60 | (**will supplement) | | |

| DU321RB | 30 amp/240v indoor disconnect | S011132630.002 | 3240 | 000379 |
| VVPP | power pack Hubbell x 50 | (**will supplement) | | |
| HGL36060 | power pack 60 amp/600v breaker | S011132630.002 | 3240 | 000379 |

(True and correct copies of the invoices referenced in the chart, *supra,* are attached to Wood's

Motion as Exhibit "H")

Likewise, Irby's Whitehead readily admits that he and Lisa Meyer accepted return of the

items and subsequently checked those items back into stock in Irby's system. (See Ex. B,

Whitehead Trans. at 108:10-109:5; 110:24-113:13; 116:20-117:18) Whitehead acknowledged

that he and Meyers caused "return sheets" to be created which showed where they checked these

items back into Irby's system on October 8, 2021. (See Irby Return Sheet Invoices, attached to

Wood's Motion as Exhibit "I")

When asked why he refused to issue credit to Wood, Whitehead brazenly testified:

> Q. Okay. For all these items that you check back in on this
> Document [Irby-CCW 1020] 1020 –
> A. Uh-huh.
> **Q. – did Mr. Wood actually receive credit for those items that
> he returned to you?**
> **A. He did not.**
> Q. Okay. Why did he not?
> A. Mr. Wood told me at my counter that a bill of material was the
> distributor's responsibility and, therefore he was not going to help
> with any of the missed fixtures.
> Q. Okay.
> A. So, since the BOM was the distributors bill – responsibility, I
> figured overages were the same thing.
> ...
> **A. Correct, so he paid for all those items. When he won the
> job, he had a bill of material. On that bill of material was some
> shortages, some long. He didn't want to help on the shortages.
> So I didn't figure he needed credit for the long –**
> Q. (By Mr. Twiford) Okay. So, the –
> **A. – and to try to help make up some of the money that we**

**lost.**

**Q. Okay. So, there it is. Irby lost $60,000 on this deal. So it was – the decision was made not to issue credit for the items that [Wood] returned –**

**A. Correct.**

**Q. – in order to help Irby offset its losses?**

      Ms. Gregory: Object –

 **A. Correct.**

      Ms. Gregory: – to the form.

**A. Yes.**

**Q. (By Mr. Twiford) Do you agree with that?**

**A. I agree with that.**

(See Ex. B, Whitehead Trans. at 121:21-123:18)

Whitehead further admitted that he authored an email on August 16, 2021 to Wood that

informed Wood that he was refusing credit for the returned items, stating:

> **...As for the material that you returned on the gear portion, we will not be crediting that to your account. This will aide in our recovery, and hopefully you are fine with that.**

(See Whitehead's August 16, 2021 email to Wood, attached to Wood's Motion as Exhibit "J";

see also Ex. B, Whitehead Trans. at 124:1-125:16) When asked what he meant by the phrase

"our recovery" in this email, Whitehead testified:

> **Q. You said that "this will aide in our recovery" (sic).**
> **A. Correct.**
> **Q. Okay. So, "our recovery" means Irby's recovery?**
> **A. Correct.**
> **Q. Okay. And that recovery refers to the 60-plus-thousand-dollars that Irby lost.**
> **A. Correct.**

(See Ex. B, Whitehead Trans. at 125:8-16)

Irby charged Wood well in excess of $15,000 for these returned items, however, Irby has

gone out of its way to avoid revealing *precisely* what it actually charged Wood for them.

7

For example, when Wood sought documents evidencing this in written discovery, Irby refused to turn over documents, responding:

> **REQUEST NO. 6:** Please produce all documents which evidence or tend to evidence Irby's costs for the electrical materials and items "on the gear portion" that Plaintiff Wood returned to Irby (as acknowledged and specifically referenced in Irby's email authored by Walter Whitehead and transmitted on August 16, 2021, at 9:48 a.m. to Plaintiff and other Irby employees and/or officers).
>
> **RESPONSE**: Irby objects to this Request on the grounds that the phrase "tend to evidence" is vague. Irby is not clear what CCW intends by the phrase tend to evidence. Irby also objects to this request because it misstates facts and assumes facts not in evidence. Irby also objects to this request because it is not relevant to the claims or defenses of any party. Based on the contract between the parties, Irby's costs for any items allegedly returned by CCW are not relevant to any potential credits that could be applied to CCW's account.
> Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Irby is withholding information responsive to this request because the information is not relevant to the claims or defenses of any party.

(Irby's Responses to Wood's Requests for Production, which are attached to Wood's Motion as Exhibit "K") Further, the invoices in Exhibit H reflect that most of the gear and materials appear to have been sold to Wood in "lot prices" rather than showing individual prices for each item. This further complicates Wood's ability to value the items in question and demonstrates that Irby is the party who should have offered the underlying documents to show how Irby calculated the "lot prices."

There is no question that Wood is entitled to partial summary judgment on the issue of Irby's liability to Wood for its failure to credit his account for the returned gear and materials. Wood is also entitled to summary judgment regarding his valuation of these items, as well,

particularly where Irby has failed to offer *any evidence whatsoever* to contradict the minimum

valuation that Wood placed on these items (see the list of returned items from Ex. G, *supra*).

The Return Sheets created by Whitehead and Meyer also fail to assign a value to the

returned items.  (See Return Sheets, Ex. I)    While Wood has made his best attempt to ascribe a

value to those returned items, discussed *supra*, there is no doubt that Irby is now and always has

been the party in possession of the necessary information to accurately identify the costs of each

item; yet, Irby has sought to cloud the issue and refused to provide the valuation at each

opportunity.

In addition, the evidence strongly suggests that Irby resold Wood's surplus gear and

materials after Whitehead checked the items back into Irby's inventory in 2021, which is 1)

conversion by Irby, and 2) necessarily provided Irby with a *windfall* where Irby first collected

payment for those items from Wood and then subsequently collected payment for those items a

*second time* from a subsequent purchaser.

As the discovery period is now closed, Irby cannot present new or contradictory evidence

regarding the valuation presented by Wood for the returned goods; as such, Wood is entitled to

summary judgment in a minimum amount of $16,702.99 and up to $42,052.99.

    **c.**    **Irby's failure to fully apply payments to Wood's account in the amount of $2,284.65.**

Wood also seeks partial summary judgment on the issue of Irby's failure to fully apply

the entirety of several checks that Irby accepted as payment, which misapplications amount to

$2,284.65.

Wood sent at least four checks to Irby which Irby cashed, but the full amount of which

Irby never applied to Wood's account: checks nos. 3001; 3133; 3198; and, 3628. (See Wood's canceled checks, Ex. L)

Irby produced a number of invoices which contain Irby's own Eclipse legends showing which invoices had payments applied from each of Wood's checks at issue; each of those invoices are produced as exhibits referenced, *infra*.

Underapplication of each check is summarized as follows:

Check No. 3001 (Ex. L at p.1) was underapplied by $18.30;

Check No. 3133 (Ex. L at p.2) was underapplied by $2,054.07;

Check No. 3198 (Ex. L at p.3) was underapplied by $101.27; and,

Check No. 3628 (Ex. L at p.4) was underapplied by $111.01.

Check No. 3001 in the amount of $5,187.92 was applied to the following Irby invoices in the following amounts:

| Date | Inv. # | Amount Applied: | Bates No. |
|------|--------|-----------------|-----------|
| 03/20/2018 | S010662822.005 | $1,872.33 | 00088 |
| 03/20/2018 | S010662822.004 | $592.66 | 00090 |
| 03/20/2018 | S010662822.006 | $1,314.71 | 00092 |
| | | | |
| 02/21/2018 | S010628129.001 | $23.88 | 00094 |
| 03/01/2018 | S010599796.001 | +$1,366.04 | 00097 |
| | Total application: | $5,169.62 | |
| | | | |
| | Check amount: | $ 5,187.92 | |
| | Applied: | $-5,169.62 | |
| | **Underapplication:** | **$    18.30** | |

(See Invoices, Ex. L.1)

Check No. 3133 in the amount of $5,187.92 was applied to the following Irby invoices in the following amounts:

| Date | Inv. # | Amount Applied: | Bates No. |
|---|---|---|---|
| 07/18/2018 | S010842591.006 | $2,929.96 | 00142 |
| 07/30/2018 | S010842590.002 | $6,807.00 | 00152 |
| 07/30/2018 | S010842591.011 | $4,170.65 | 00155 |
| 07/30/2018 | S010842591.012 | $283.02 | 00157 |
| 07/31/2018 | S010842591.014 | $508.72 | 00159 |
| 07/30/2018 | S010842591.010 | $1,993.83 | 00166 |
| 08/03/2018 | S010842591.016 | +$1,323.75 | 00174 |
| | Total application: | $18,016.93 | |

| | | |
|---|---|---|
| Check amount: | $ 20,071.00 | |
| Applied: | $-18,016.93 | |
| **Underapplication:** | **$ 2,054.07** | |

(See Invoices, Ex. L.2)

Check No. 3198 in the amount of $121,224.89 was applied to the following Irby invoices in the following amounts:

| Date | Inv. # | Amount Applied: | Bates No. |
|---|---|---|---|
| 11/14/2018 | S011008842.004 | $195.03 | 00208 |
| 11/14/2018 | S011008840.012 | $1,801.48 | 00210 |
| 11/16/2018 | S011044139.001 | $362.99 | 00212 |
| 11/14/2018 | S011008840.013 | $31,030.39 | 00219 |
| 11/14/2018 | S011008842.003 | $1,104.97 | 00227 |
| 11/15/2018 | S011008840.016 | $833.84 | 00229 |
| 11/14/2018 | S011008840.014 | $12,115.23 | 00231 |
| 11/26/2018 | S011041356.002 | $2,979.00 | 00237 |
| 11/26/2018 | S011050532.001 | $0.02 | 00241 |
| 11/28/2018 | S011008843.002 | $10,000.00 | 00245 |
| 11/29/2018 | S011079991.001 | $9.93 | 00247 |
| 11/28/2018 | S011055045.001 | $2,715.73 | 00251 |
| 11/26/2018 | S011050556.001 | $38.97 | 00252 |
| 12/03/2018 | S011008840.018 | $6,225.45 | 00253 |
| 12/10/2018 | S011137760.001 | $201.34 | 00257 |
| 12/07/2018 | S010888172.002 | $10,403.15 | 00258 |
| 12/07/2018 | S011124365.002 | $600.00 | 00260 |
| 12/12/2018 | S010888172.008 | $2,822.55 | 00262 |
| 12/13/2018 | S010888172.010 | $241.13 | 00264 |
| 12/12/2018 | S010888172.009 | $455.43 | 00267 |
| 12/13/2018 | S010888172.011 | $16.01 | 00270 |

| | | | |
|---|---|---|---|
| 12/17/2018 | S011146340.001 | $7,341.86 | 00275 |
| 12/13/2018 | S010888172.012 | $241.13 | 00276 |
| 12/18/2018 | S010888172.014 | $31.27 | 00278 |
| 12/20/2018 | S010888172.016 | $62.54 | 00280 |
| 12/21/2018 | S010888172.018 | $109.54 | 00282 |
| 12/26/2018 | S011146340.002 | $94.51 | 00284 |
| 12/18/2018 | S011008844.002 | $21,984.00 | 00285 |
| 12/26/2018 | S011146340.003 | $73.93 | 00287 |
| 12/17/2018 | S011146967.001 | $3,740.20 | 00289 |
| 12/26/2018 | S011146340.004 | $188.81 | 00290 |
| 12/26/2018 | S011146967.002 | $541.76 | 00292 |
| 12/26/2018 | S011146967.005 | $7.14 | 00293 |
| 12/26/2018 | S011146967.003 | $12.64 | 00294 |
| 12/26/2018 | S011146967 .006 | $21.80 | 00295 |
| 12/26/2018 | S011146967.004 | $27.00 | 00296 |
| 12/27/2018 | S010888172.024 | $115.01 | 00297 |
| 12/27/2018 | S010888172.025 | $127.53 | 00299 |
| 12/27/2018 | S010888172.026 | $102.19 | 00301 |
| 12/27/2018 | S010888172.027 | $270.71 | 00303 |
| 12/27/2018 | S010888172.028 | $1,669.11 | 00305 |
| 12/28/2018 | S010888172.032 | +$208.30 | 00337 |
| | Total application: | $121,123.62 | |
| | | | |
| | Check amount: | $ 121,224.89 | |
| | Applied: | $-121,123.62 | |
| | **Underapplication:** | **$      101.27** | |

(See Invoices, Ex. L.3)

Check No. 3628 in the amount of $17,037.45 was applied to the following Irby invoices

in the following amounts:

| Date | Inv. # | Amount Applied: | Bates No. |
|---|---|---|---|
| 11/13/2019 | S011133939.006 | $2,757.21 | 00705 |
| 11/20/2019 | S011133925.002 | $5,620.00 | 00723 |
| 12/01/2019 | S011654444.001 | $34.28 | 00729 |
| 12/03/2019 | S011666057.003 | $42.30 | 00731 |
| 12/03/2019 | S011666057.002 | $37.30 | 00732 |
| 12/03/2019 | S011679182.001 | $135.00 | 00733 |
| 12/03/2019 | S011648586.002 | $631.62 | 00737 |
| 12/12/2019 | S011694853.001 | $872.59 | 00738 |
| 12/03/2019 | S011680891.001 | $(62.50) | 00739 |

| | | | |
|---|---|---|---|
| 12/06/2019 | S011685819.001 | $369.75 | 00740 |
| 12/26/2019 | S011701824.001 | $223.25 | 00741 |
| 12/10/2019 | S011689975.001 | $611.20 | 00742 |
| 12/10/2019 | S011689997.001 | $105.60 | 00743 |
| 12/13/2019 | S011697216.001 | $6.79 | 00744 |
| 12/12/2019 | S011695558.001 | $9.19 | 00747 |
| 12/13/2019 | S011696568.001 | $18.98 | 00748 |
| 12/31/2019 | S011713522.001 | $157.65 | 00749 |
| 12/16/2019 | S011699559.001 | $240.95 | 00751 |
| 12/03/2019 | S011679164.001 | $228.25 | 00752 |
| 01/08/2020 | S011726404.002 | $(17.60) | 00761 |
| 01/08/2020 | S011726404.001 | $197.00 | 00762 |
| 01/07/2020 | S011723602.001 | $37.13 | 00763 |
| 01/10/2020 | S011730804.001 | $182.74 | 00764 |
| 01/09/2020 | S011728217.001 | $90.70 | 00765 |
| 01/16/2020 | S011739673.001 | $328.79 | 00767 |
| 01/15/2020 | S011738194.001 | $306.00 | 00771 |
| 01/21/2020 | S011731296.002 | $1,530.00 | 00772 |
| 01/22/2020 | S011748038.001 | $163.50 | 00774 |
| 01/17/2020 | S011740804.001 | $590.50 | 00777 |
| 01/28/2020 | S011756651.001 | $67.50 | 00778 |
| 02/06/2020 | S011728740.002 | $1,334.00 | 00786 |
| 02/07/2020 | S011774245.001 | $15.00 | 00788 |
| 02/13/202 | S011783901.001 | $0.77 | 00789 |
| 01/30/2020 | S011761372.001 | $17.00 | 00791 |
| 02/27/2020 | S011804575.001 | $44.00 | 00798 |
| | Total application: | $16,926.44 | |
| | Check amount: | $ 17,037.45 | |
| | Applied: | $-16,926.44 | |
| | **Underapplication:** | **$     111.01** | |

(See Invoices, Ex. L.4)

Irby Credit Analyst Brittany Sebren testified that it was not uncommon for payments made

to go unapplied to a customer's account if neither Irby nor the customer provide a specific remittance

that instructs the Eclipse software how to apply payment to an invoice. (See Ex. F, Sebren Trans. at 71:5-15; 97:12-25)

Sebren admitted that when this situation arises, she is the Irby employee responsible for rectifying the underapplication of payments. (Ex. F, Sebren Trans. at 98:9-20)

When pressed about the underapplication of Wood's checks to his account, Sebren admitted that it was possible that Wood's checks were underapplied:

> Q. Okay. Does that mean that it's possible that Wood's account still has money hanging out there that hasn't been applied to any invoices?
> A. It's possible.
> Q. Okay. Has anyone asked you to check to see if that is, in fact, the case?
> A. No.
> Q. Okay. Have you taken it upon yourself to do so?
> A. No.
> Q. Are you going to so later [after her deposition]?
> A. Probably.
> Q. Okay. When you find out the results –
> A. Or tomorrow.
> Q. When you find out the results of that, do you intend to inform your attorney?
> A. Yes.
> ...
> Q. Would it surprise you, having reviewed this, to find that other checks may have also been under- or over-applied?
>      Ms. Gregory: Object to the form.
> A. No.
> By Mr. Twiford:
> Q. It would not surprise you?
> A. No.
> Q. Okay. Does this generally happen on other accounts, too.
> A. Yes.
> Q. Okay. Is it hard to rectify all of that?
> A. Sometimes, yes.
> Q. Okay. Whose job is that?
> A. Ours and cash apps to figure out where – what went where and why and how to fix it.

(Ex. F, Sebren Trans. at 150:24 - 153:13)

Based off of the invoices produced by Irby in response to Wood's request for all invoices related to Wood's account, it is apparent that Irby has underapplied payment to Wood's account in the amounts as shown, *supra*. Wood is entitled to summary judgment in his favor in the amount of $2,284.65 in underapplied payments he made to Irby.

### d. Irby owes Wood $5,108.08 for un-refunded sales taxes which Irby wrongfully assessed and improperly deducted from Wood's payments.

Wood seeks partial summary judgment on the issue of Irby's failure to properly credit his account for improperly assessed sales taxes and to which Irby improperly applied payments from Wood in the amounts of $435.69 in 2018 and $4,672.39 in 2019, discussed at length, *infra*.

Irby appears to have actually credited back improperly assessed taxes (for which payment had yet to be applied) in 2020 in an amount equal to $1,110.47.

Additionally, Wood seeks summary judgment where Irby still seeks to collect improperly assessed taxes in an amount of $203.25 for the invoices from 2021 that Irby alleges Wood still owes.

All of the projects at issue for purposes of this Motion for Partial Summary Judgment are exempt from Oklahoma State sales taxes. (See Sales Tax Exemption Letters, Ex. M) Wood provided Irby with copies of the School's tax letters, and there is reasonable dispute as to the tax exempt status of each of the projects. (See Transmissions, Ex. N) Irby does not appear to reasonably dispute that the Edmond Memorial and Western Heights projects at issue were properly exempt from sales tax.

Despite its awareness that *all* the purchases of fixtures, gear, and supplies for both Edmond Memorial and Western Heights were exempt from sales taxes, Irby inconsistently and improperly

assessed sales taxes to *some* of the purchases and *not* to others.  Wood raised with Irby as early as 2018, discussed *infra*.

Irby's Sebren testified that customers like Wood were often instructed to "short pay those invoices" which improperly assessed sales tax by the tax amounts or by making "tax adjustments" to some invoices as a credit.  (See Ex. F, Sebren Trans. at 134:16 - 135:3) Additionally, Copeland acknowledged that she communicated with Wood's wife, Michele Welch, regarding sales taxes that Wood disputed were improperly assessed and owed to Wood.  (See Trans. Copeland, Ex. E at 136:18-138:3)

The invoices produced by Irby have been used to create the following chart evidencing the taxes Irby improperly assessed and paid to itself in 2018:

| Date: | Inv.# | Job | Check# | Tax Amt. | Bates# |
|---|---|---|---|---|---|
| 2/12/2018 | S01061294.001 | Ed. Mem. | 653478 | $19.45 | 000079 |
| 2/15/2018 | S010616195.002 | Ed. Mem. | 652661 | $32.34 | 000086 |
| 3/1/2018 | S010599796.001 | W. Heights | 3001 | $96.56 | 000097 |
| 4/19/2018 | S010717869.001 | Ed. Mem. | 653478 | $4.58 | 000111 |
| 5/15/2018 | S010732667.002 | Ed. Mem. | 954576 | $26.91 | 000127 |
| 5/24/2018 | S010755121.001 | Ed. Mem. | 954576 | $94.13 | 000149 |
| 8/31/2018 | S010923859.001 | W. Heights | 3167 | $80.53 | 000176 |
| 9/1/2018 | S010923752.001 | W. Heights | 3167 | $52.37 | 000187 |
| 11/16/2018 | S01144139.001 | W. Heights | 3198 | +$28.82 | 000212 |

**TOTAL:**    **$435.69**

(See Invoices, Ex. O)

The invoices produced by Irby have been used to create the following chart evidencing the taxes Irby improperly assessed and paid to itself in 2019:

| Date: | Inv.# | Job | Check# | Tax Amt. | Bates# |
|---|---|---|---|---|---|
| 2/8/2019 | S011134284.002 | W. Heights | 3240 | $47.99 | 000347 |
| 2/11/2019 | S011134284.007 | W. Heights | 3240 | $43.24 | 000351 |
| 2/11/2019 | S011134284.006 | W. Heights | 3240 | $169.11 | 000353 |

| | | | | | |
|---|---|---|---|---|---|
| 2/27/2019 | S011134284.017 | W. Heights | 3240 | $12.71 | 000360 |
| 2/12/2019 | S011134285.002 | W. Heights | 3240 | $25.88 | 000362 |
| 2/11/2019 | S011134284.008 | W. Heights | 3240 | $6.98 | 000364 |
| 2/20/2019 | S011134284.013 | W. Heights | 3240 | $502.28 | 000373 |
| 2/27/2019 | S011134284.019 | W. Heights | 3240 | $194.74 | 000375 |
| 2/27/2019 | S011134284.018 | W. Heights | 3240 | $50.84 | 000377 |
| 2/15/2019 | S011134284.010 | W. Heights | 3240 | $144.95 | 000381 |
| 2/27/2019 | S011134284.020 | W. Heights | 3240 | $145.32 | 000383 |
| 4/26/2019 | S011134284.002 | W. Heights | 3256 | $193.04 | 000452 |
| 4/9/2019 | S011134288.002 | W. Heights | 3256 | $32.43 | 000454 |
| 3/27/2019 | S011294690.001 | W. Heights | 3256 | $57.96 | 000428 |
| 4/16/2019 | S011134288.004 | W. Heights | 3256 | $2.07 | 000465 |
| 5/9/2019 | S011134282.004 | W. Heights | 3256 | $60.62 | 000460 |
| 5/29/2019 | S011134286.002 | W. Heights | 3284 | $1,991.51 | 000480 |
| 6/21/2019 | S011263265.003 | W. Heights | 3293 | $47.01 | 000514 |
| 6/24/2019 | S011271444.001 | W. Heights | 3293 | $3.97 | 000519 |
| 9/10/2019 | S011548237.001 | W. Heights | 3454 | $8.92 | 000625 |
| 9/10/2019 | S011547268.001 | W. Heights | 3454 | $44.82 | 000628 |
| 9/17/2019 | S011509575.006 | W. Heights | 3454 | $102.17 | 000630 |
| 9/17/2019 | S011559855.001 | W. Heights | 3365/3454 | $3.00 | 000636 |
| 9/27/2019 | S011548700.002 | W. Heights | 3411 | $561.21 | 000655 |
| 10/21/2019 | S011585553.002 | W. Heights | 3411 | $217.52 | 000670 |
| 10/21/2019 | S011612907.001 | W. Heights | 3411 | $1.13 | 000682 |
| 10/26/2019 | S011621696.001 | W. Heights | 3411 | +$0.97 | 000688 |
| | | | **TOTAL** | **$4,672.39** | |

(See Invoices, Ex. P)

Irby appears to have given Wood credit on December 27, 2019 for *some* sales taxes improperly assessed in the amount of $3,236.54 and which invoices and amounts are listed on Bates No. Irby-CCW 000750 (see the final page of Ex. P). However, Irby has offered no explanation for its decision to credit some sales taxes back for 2019 and *not to do so* for *all improperly assessed sales taxes*.

Plaintiff has not identified any invoices where un-refunded taxes were assessed or improperly paid by Wood to Irby for 2020.

The invoices produced by Irby have been used to create the following chart evidencing

the sales taxes Irby improperly assessed and upon which Irby seeks to be paid for 2021:

| Date: | Inv.# | Job | Check# | Tax Amt. | Bates# |
|---|---|---|---|---|---|
| 1/4/2021 | S012234092.001 | W. Heights | | $30.30 | 000918 |
| 4/8/2021 | S012380727.001 | W. Heights | | $4.00 | 000982 |
| 4/8/2021 | S012380727.002 | W. Heights | | $0.18 | 000984 |
| 5/21/2021 | S012451565.001 | W. Heights | | $162.82 | 000988 |
| 8/25/2021 | S012600156.001 | W. Heights | | +$5.95 | 0001019 |
| | | | **TOTAL:** | **$203.25** | |

(See Invoices, true and correct copies of which are attached to Wood's Motion as Ex. Q)

Irby actually gave Wood credit previously for certain sales taxes assessed by Irby in 2019, which is evidenced by the ledger code "TAX ADJ." on the following invoices in the following amounts:

| Date: | Inv.# | Adj. Date | Job | Check# | Tax Amt. |
|---|---|---|---|---|---|
| 7/1/2019 | S011440705.001 | 12/9/2019 | W. Heights | 3365 | $28.89 |
| 7/2/2019 | S011443870.001 | 12/9/2019 | W. Heights | 3365 | $10.86 |
| 7/3/2019 | S011476048.003 | 11/27/2019 | W. Heights | 3365 | $110.18 |
| 7/29/2019 | S011476048.004 | 11/27/2019 | W. Heights | 3365 | $3.91 |
| 8/5/2019 | S011476048.006 | 11/27/2019 | W. Heights | 3365 | $20.45 |
| 8/6/2019 | S011494139.001 | 11/27/2019 | W. Heights | 3365 | $1.42 |
| 8/7/2019 | S011441243.002 | 11/27/2019 | W. Heights | 3365 | $555.45 |
| 8/21/2019 | S011517670.001 | 11/27/2019 | W. Heights | 3365 | $120.70 |
| 8/19/2019 | S011476048.009 | 11/27/2019 | W. Heights | 3365 | $3.80 |
| 8/28/2019 | S011509575.004 | 11/27/2019 | W. Heights | 3365 | $86.28 |
| 8/28/2019 | S011476048.012 | 11/27/2019 | W. Heights | 3365 | $10.49 |
| 8/30/2019 | S011509690.002 | 11/27/2019 | W. Heights | 3365 | $151.71 |
| 9/4/2019 | S011537992.001 | 11/27/2019 | W. Heights | 3365 | $6.33 |
| | | | | **TOTAL:** | **$1,110.47** |

(See Invoices, Ex. R)

Irby clearly knew and knows that the Edmond Memorial and Western Heights projects were sales tax exempt, yet the invoices clearly show that Irby improperly assessed and paid itself at least $5,108.08 from Woods payments in 2018 and 2019, *supra*. Wood is entitled to summary judgment in the amount of $5,108.08 from Irby for the un-refunded and improperly assessed

sales taxes collected from Wood by Irby.

Worse yet, even during the course of this litigation, Irby still attempts to run up the score on Wood by attempting to collect another $203.25 in sales tax via this litigation, per the 2021 invoices, *supra*. The fact that Irby has previously acknowledged its mistake and removed/adjusted sales taxes in 2019 is prima facie evidence that Irby knew it was assessing and collecting sales taxes improperly from Wood. All facts give rise to the defense that Irby is estopped from claiming that Wood owed sales taxes on 2021 invoices assessed to the Western Heights project, and this Court should reduce those alleged invoices by the sales taxes shown thereon.

## II.     Standard of review.

Federal Rule of Civil Procedure 56(c) states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56. The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir.1988).

The mere existence of a disputed factual issue does not foreclose summary judgment. The dispute must be genuine, and the facts must be material. *See Booth v. Wal-Mart Stores, Inc.*, 75 F.Supp.2d 541, 543 (S.D. Miss. 1999). With regard to "materiality," only those disputes or facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *See id.* at 543 (citing *Phillips Oil Company v. OKC Corp.*, 812 F.2d 265,

272 (5th Cir.1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial." *Id.* ( quoting *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir.1987)).

To rebut a properly supported motion for summary judgment, a plaintiff must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Booth, 75 F.Supp.2d at 543. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The non-movant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. *See Booth*, 75 F.Supp.2d at 543.

### III.  <u>The law of open accounts</u>.

The Mississippi Supreme Court stated the law on prima facie proof for open account cases in *Natchez Elec. & Supply Co., Inc. V. Johnson*, 968 So. 2d 358 (Miss. 2007), a case involving an electrical contractor and electrical supplier:

> I. PRIMA FACIE PROOF FOR OPEN-ACCOUNT CASES
>
> ¶ 6. The United States Court of Appeals for the Fifth Circuit has defined "prima facie" as: "[evidence] such as will suffice until contradicted and overcome by other evidence . . . [a] case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir.1982) (quoting *Black's Law Dictionary* 1353 (4th ed.1968)) (cited with approval in *Hewes v. Langston*, 853 So.2d 1237, 1270 (Miss.2003)). A prima facie case is made by the proponent solely

on his proof. When this burden of proof has been met, the burden of going forward shifts to the contestants to overcome the prima facie case. *Smith v. Averill*, 722 So.2d 606, 611 (Miss.1998). More specifically, once a prima facie case is made on an open account, the burden of proof shifts to the account debtor to prove that the amount claimed is incorrect. *B.E.I., Inc. v. Newcomer Lumber & Supply Co.*, 745 N.E.2d 233, 237 (Ind.Ct.App. 2001) (citing *Auffenberg v. Board of Trustees of Columbus Regional Hosp.*, 646 N.E.2d 328, 331 (Ind.Ct.App.1995)).

¶ 7. The Iowa Supreme Court has explained what is required to make a prima facie case in an open-account case:

> It is our conclusion that plaintiff's actual ledger cards showing each entry of debit and credit, the testimony of plaintiff's manager showing the simultaneous business machine posting and invoice billing of the customer, his testimony concerning the correctness of the entries, and his testimony that all materials represented by the entries had been delivered to defendant constitute sufficient evidence to make a prima facie case.

*Prestype, Inc. v. Carr*, 248 N.W.2d 111, 119 (Iowa 1976) (quoting *Gardner and Beedon Co. of Springfield v. Cooke*, 267 Or. 7, 513 P.2d 758 (1973)).

968 So. 2d 358 at 360-61.

**IV.    Wood is entitled to partial summary judgment on the issues of: the returned goods for which Irby failed to issue him credit; unrefunded sales taxes for the years 2018 and 2019; improperly assessed sales taxes for the year 2021; and for $2,284.65 for payments made by Wood which Irby has yet to apply to his account.**

Admittedly, this case is somewhat reversed from the norm: Wood brought suit against

Irby and claimed that Irby failed to credit him for the surplus gear and materials that Wood

indisputably returned.  At the time he filed suit, Wood had not yet discovered that his checks had

been under-applied by Irby or that Irby had failed to credit him back sales taxes improperly paid

out of his checks in 2018 and 2019.

### a.     Returned gear and materials.

The Motion and this Memorandum are replete with proof that Wood purchased the gear
(Ex. H).  There is no dispute that Wood returned that gear and materials to Irby: Wood swore to
it in his complaint (Ex. G); Irby's employees Henderson and Whitehead readily admit that Wood
returned the gear (see testimony cites, *supra)*; Whitehead admits that he and Meyer created
Return Sheets (Ex. I) that show where they checked that gear and materials back into Irby's
inventory; Whitehead acknowledges that he accepted return of the goods, but that he would not
be issuing credit to Wood in his August 16, 2021 email (Ex. J).  All of this proof creates a prima
facie case under *Johnson*'s framework that clearly shows Wood has met his burden.

Under *Johnson*, the burden shifts to Irby to show materials facts in dispute – i.e. that
Wood's accounting regarding the surplus goods and materials is incorrect or that Irby did not
accept return of the gear and materials.

The Plaintiff in *Johnson* – the Natchez Electrical Company – was the supplier/distributor.
Wood has gone to great lengths to meet the burden imposed on him by *Johnson.*  Wood would
urge the Court to require more than allusory denials from Irby regarding the valuation of the
returned gear and materials.  After all, Irby is the party who is presumably in possession of the
most accurate records from which to draw valuations, but Irby has gone out of its way to
obfuscate and avoid the issue of valuation.  Now that the discovery period is closed, Irby should
be estopped from asserting any valuation of the returned gear and materials.  The time for Irby to
do so has passed, and Irby should be held to task.

For the foregoing reasons, Wood is entitled to a partial summary judgment on the issue of

the returned gear in a minimum amount of $16,702.99 and up to $42,052.99.

**b.    Unapplied portions of checks paid by Wood.**

The record is replete with Wood's evidence that Irby under-applied at least four (4) of Wood's checks: 3001, 3133, 3198, and 3628 to a total amount of $2,284.65, as is detailed in the charts, *supra*.  Wood produced the copies of his canceled checks. (Ex. L) Wood has presented every invoice produced by Irby that bears the payment legend of each of these checks (Exs. L.1, L.2, L.3, and L.4) and has tabulated the total application of those checks.  It is indisputable that these checks were underapplied.  Irby's own Sebren testified: 1) that she had not been asked to perform a check for unapplied payments on Wood's account; 2) that she would not be surprised to learn that there were unapplied amounts existing; and, 3) that she would personally run a report to see if there were unapplied funds on Wood's account.  Sebren has apparently either not run this report or Irby refuses to produce it.  Neither Wood nor his counsel have ever received the results of such a report.

Again, under the *Johnson* framework, Wood has met his burden of establishing prima facie proof that Wood's checks were underapplied, and the burden here shifts to Irby to prove that Wood's calculations are incorrect.  Again, Wood would urge the Court to demand probative evidence that is more than illusory or unsubstantial.

**c.    Unrefunded Sales Taxes and improperly assessed sales taxes.**

Wood has clearly met his burden of proof to establish a prima facie case that Irby failed to *refund* improperly collected sales taxes in 2018 and 2019.  Irby readily admits that the Western Heights and Edmond Memorial jobs were sales tax exempt, Irby had the tax letters (Ex. M).  Irby even went so far as to *credit* some of the improperly assessed sales taxes in 2019.  (See Irby's

23

A.R. Ledger, Bates No. Irby-CCW 001085; see also last page of Ex. P, Irby's Invoice No. S011711267.001, Bates No. 000750) However, Irby refuses to give credit or to refund to Wood those sales taxes which it already applied Wood's checks to cover, see charts, *supra*. There is no reasonable dispute as to the impropriety of Irby's assessment of taxes on those invoices (Exs. O, P) in 2018 and 2019 and Wood plainly makes his prima facie showing that he is due $435.69 for sales taxes unrefunded in 2018 and for $4,672.39 for sales taxes unrefunded in 2019.

Further, Wood is entitled to partial summary judgment declaring that Irby's 2021 invoices (Ex. Q) improperly seek to impose sales taxes on Wood in the amount of $203.25.

Under *Johnson* and other precedent, the burden shifts to Irby to prove that it rightfully assessed the sales taxes at issue here or that it did, in fact, credit those taxes back to Wood's account.

## V. Conclusion

Wood has made a prima facie showing of proof to support his return of surplus gear and materials, unapplied payment from his checks to Irby, and Irby's failure to refund or credit him for sales taxes which Irby should never have assessed or collected from Wood. The burden may shift to Irby to prove that Wood is incorrect in his accountings, however, Irby is incapable of offering any real proof other than illusory statements and ledgers which do not accurately reflect the information contained on Irby's own Eclipse invoices. Because of this, the Court should grant partial summary judgment to Wood on the issues raised in his Motion. The remaining issues such as Wood's lost profits, damage to his business reputation, and punitive damages should remain pending trial on the merits.

`**Wherefore, premises considered** Plaintiff Chris C. Wood prays that the Court will

grant him relief in the form of partial summary judgment over the following issues in the following amounts:

1) Wood prays that the Court will grant him partial summary judgment over the issue of Irby's liability to Wood for the surplus gear and materials that Wood returned to Irby in March of 2021 in expectation of credit;

2) Wood prays that the Court will grant him partial summary judgment in the amount of a minimum amount of $16,702.99 and up to $42,052.99 which represents the value of the surplus gear and materials that Wood returned to Irby and which Irby subsequently converted to its own benefit.

3) Wood prays for partial summary judgment on the issue of un-refunded sales taxes in the following amounts for the following years:

    1. $435.69 in 2018; and,

    2. $4,672.39 in 2019.

4) Wood prays for partial summary judgment on the issue of improperly assessed sales taxes in the amount of $203.25 for the allegedly unpaid invoices from 2021 which are the subjects of and form the basis for Defendant's counterclaims.

5) Wood prays for partial summary judgment on the issue of Irby's failure to fully apply payments from Wood's checks in the amount of $2,284.65.

This the 1st day of November, 2023.

**Respectfully submitted by:**

**Plaintiff Chris C. Wood d/b/a CCW Electric**

/s/H. Hunter Twiford IV

Attorney for Plaintiff

H. Hunter Twiford IV (MSB#103874)
H. Hunter Twiford IV PLLC
567 Hwy 51 Suite C
Ridgeland, Mississippi 39157
(601) 953-6885
htwiford4law@gmail.com

## CERTIFICATE OF SERVICE

I, H. HUNTER TWIFORD IV, do hereby certify that on November 1, 2023 I

electronically filed the foregoing with the ECF system causing notice of such filing to be sent to

the following:

| | |
|---|---|
| Brian Craig Kimball | brian.kimball@butlersnow.com |
| Haley F. Gregory | haley.gregory@butlersnow.com |
| Brianna N. Caldwell | brianna.caldwell@butlersnow.com |

**ATTORNEYS FOR DEFENDANT**

/s/H. Hunter Twiford IV
H. HUNTER TWIFORD IV